UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCAS J. HEWITT,

        Plaintiff,

                                     File No. 1:13-CV-310

v.

                                     HON. ROBERT HOLMES BELL

BANK OF AMERICA NA, et al.,

        Defendants.

_____/

## **O P I N I O N**

On February 27, 2013, Plaintiff Lucas J. Hewitt sued Defendants in Kent County
Circuit Court alleging improprieties in the foreclosure of his property.  (Dkt. No. 1, Ex. 1.)
The case was removed to federal court on March 21, 2013.  (Dkt. No. 1.)  Presently before
the Court is Defendant Bank of America, N.A.'s motion to dismiss.[1]  (Dkt. No. 7.)  For the
reasons that follow, this motion will be granted.

### I.

On November 16, 2009, Plaintiff executed a promissory note in favor of First Place
Bank for $131,572, secured by a mortgage on the property located at 4784 Crestline Ct. SW,
Wyoming, Michigan 49519.  (Dkt. No. 1, Attach. 1, Compl. Ex. A; Dkt. No. 8, Exs. A-B.)
On December 15, 2009, First Place Bank assigned its interest in the mortgage to Mortgage

---

[1]Also before the Court is a proposed stipulation and order which provided that Plaintiff
could file his response to the motion to dismiss on or before June 3, 2013.  (Dkt. No. 14.)  This
stipulation and order will be granted.

Electronic Registration Systems ("MERS"). (Dkt. No. 8, Ex. C.) On November 30, 2011, MERS assigned its interest in the mortgage to Bank of America. (Dkt. No. 8, Ex. D.) Plaintiff subsequently defaulted on his payments, and Bank of America initiated foreclosure proceedings. On September 26, 2012, Bank of America purchased the property at a sheriff's sale and received a sheriff's deed. (Dkt. No. 8, Ex. E.) The present suit was subsequently filed against Bank of America, Unknown Trust, and Unknown Holders. The latter two defendants have never been identified and have not been served.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

2

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.

Plaintiff's complaint contains thirteen counts: (1) fraudulent assignment of a mortgage in violation of Mich. Comp. Laws § 600.3204(1) and (3); (2) failure to comply with the loan modification requirements of Mich. Comp. Laws §§ 600.3204(4) and 3205(c); (3) failure to comply with federal regulations requiring a face-to-face meeting to resolve a default before the borrower falls three months behind in his mortgage payments; (4) intentional fraud; (5) constructive fraud; (6) tortious interference with contractual relations; (7) civil conspiracy; (8) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*; (9) violation of Michigan's Regulation of Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.2521, *et seq.*; (10) violation of Michigan's Occupational Code ("MOC"), Mich. Comp. Laws § 339.901, *et seq.*; (11) accounting; (12) unclean hands; and (13) breach of the

3

implied duty of good faith and fair dealing.

## A. Property Right Claims

Bank of America argues that the complaint must be dismissed in its entirety because Plaintiff no longer has an interest in the property due to the expiration of the statutory redemption period on March 26, 2013. *See* Mich. Comp. Laws § 600.3240 (noting that the redemption period expires six months after the date of the sale).

The Michigan courts have determined that, after the expiration of the redemption period, a mortgagor does not have standing to bring an action to quiet title or challenge the foreclosure proceedings. *See Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) (per curiam); *Sagmani v. Lending Assocs. LLC*, No. 302865, 2012 WL 3193940, at *2 (Mich. Ct. App. Aug. 7, 2012) (per curiam); *Awad v. Gen. Motors Acceptance Corp.*, No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. Apr. 24, 2012). The Sixth Circuit has since clarified that this line of cases "does not turn on standing doctrine" but instead depends on Michigan's statutory right to redeem, which courts have no power to enlarge or abridge. *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, 505 F. App'x 543, 548-49 (6th Cir. 2012); *see also El-Seblani v. IndyMac Mortg. Servs.*, No. 12–1046, 2013 WL 69226 (6th Cir. Jan. 7, 2013).[2] Once the statutory right to

---

[2]Plaintiff challenges the applicability of *Overton* and its progeny because of a footnote in a 2011 Western District of Michigan decision indicating that *Overton* does not stand for the proposition that Article III standing is extinguished after the expiration of the redemption period. *See Langley v. Chase Home Fin., LLC*, No. 1:10–cv–604, 2011 WL 1130926, at *2 n.2 (W.D. Mich. Mar. 28, 2011) (Jonker, J.). As these recent Sixth Circuit opinions illustrate, Plaintiff's Article III standing is not the issue, it is the extinguishment of his rights under Michigan law.

redeem expires, Michigan's statutes explicitly provide that all of the borrower's rights in the property are extinguished as a matter of law. *See* Mich. Comp. Laws § 600.3236; *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942). That includes any rights arising under equity. *See Senters v. Ottawa Sav. Banks, FSB,* 503 N.W.2d 639, 644 (Mich. 1993) ("Where, as in the present case, a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere.").

There is one limited exception, which allows borrowers to retain their rights after the expiration of the redemption period. If a borrower can make "a clear showing of fraud or irregularity," the divestment of the property may still be undone. *Houston*, 505 F. App'x at 549; *see also Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969). However, in order to qualify for this fraud exception and extend the redemption period, the fraud or irregularity must be in "conducting the legal measures." *Heimerdinger v. Heimerdinger*, 299 N.W. 844, 846 (Mich. 1941). This requires that the fraud or irregularity be present in the foreclosure procedure itself. *Sagmani*, 2012 WL 3193940 at *1 ("A party can challenge the foreclosure after the redemption period only if there is clear evidence of fraud or irregularity in the foreclosure proceedings."); *see also Houston*, 505 F. App'x at 549.

Counts 1-7, 9, and 12-13 are all implicated by the *Overton* line of cases because they seek to vacate the sheriff's sale and to return the property to Plaintiff. Some of these counts do allege fraud that is arguably related to the foreclosure proceedings. However, as demonstrated below, these counts alleging fraud are deficient and do not constitute a clear

5

showing of fraud. Consequently, Plaintiff lacks rights in the property, and Counts 1-7, 9, and 12-13 must all be dismissed pursuant to *Overton* and *Houston*.

### 1. Property Rights Claims Alleging Fraud

Counts 1, 4-5, 7, 9, and 12 contain allegations of fraud that arguably concern the foreclosure process. However, because Plaintiff fails to state a claim in any of these counts, these allegations of fraud are insufficient to constitute the "clear showing of fraud" required to extend the redemption period. Thus, these counts will be dismissed, and Plaintiff is foreclosed from suing to enforce his rights in the property, which have been extinguished.

### i) Count 1: Authority to Foreclose

Plaintiff makes numerous arguments in support of his contention that Bank of America lacked the authority to foreclose on the property. None of these arguments, ranging from destroyed documents to a conspiracy to defraud Plaintiff, state a plausible claim to relief.

First, Plaintiff argues that no one has the authority to foreclose on his home because the mortgage and note were "destroyed" and "ownership and/or possession of the Mortgage and Note have been severed." (Compl. ¶¶ 96, 98.) This argument is contradicted by the copy of the mortgage attached to Plaintiff's complaint and the copies of the mortgage and note provided by Bank of America. (Compl. Ex. A; Dkt. No. 8, Exs. A-B.)

Next, Plaintiff, citing Mich. Comp. Laws § 600.3204, alleges that Bank of America could not foreclose because it was not the original mortgagee and there is no record chain of

title evidencing the assignment of the mortgage to Bank of America. (Compl. ¶¶ 66-77.) According to Plaintiff, the only assignment in the chain of title is the assignment from MERS to Bank of America which is invalid because MERS lacked any interest whatsoever in the property. (Compl. ¶ 75.) Plaintiff lacks standing to bring this argument. "[A] litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010).[3] Moreover, even if Plaintiff had standing, his argument is frivolous. A valid record chain of title exists: First Place Bank's assignment to MERS, and MERS subsequent assignment to Bank of America were recorded with the Kent County Register of Deeds on April 26, 2010, and December 5, 2011, respectively. (Dkt. No. 8, Exs. C-D.) Thus, Plaintiff's contention that MERS lacked any interest whatsoever in the property is defeated by the plain terms of the first assignment. (Dkt. No. 8, Ex. C.)

Plaintiff also argues that the signatory to the second assignment, Christopher Herrera, is not a real person and is instead a robo-signer. Plaintiff's sole support for this argument is two "vastly different" signatures for Herrera on two different documents. (*See* Compl. Exs.

---

[3] Plaintiff baldly asserts that he fears "double recovery" from "Bank of America; from the unknown trustee, (the 'Trustee'), as the trustee on behalf of the unknown holders (the 'Holders'), the currently unknown holders of the asset-backed security at issue; and from the Government National Mortgage Association ('Ginnie Mae') or the Federal Housing Administration ('FHFA')." (Dkt. No. 15, at 10.) While a "genuine claim" that a plaintiff might be subject to double recovery can provide that plaintiff with standing to challenge an assignment between two third-parties, *Livonia*, 399 F. App'x at 102, this bald assertion by Plaintiff is not such a genuine claim; Plaintiff has not put forth a plausible argument that a party other than Bank of America also claims rightful ownership of the mortgage.

C-D.)  In the Court's estimation, the two "vastly different" signatures for Herrera are, in fact, substantially similar.  (*See id.*)  Given that Plaintiff has provided no other factual support for this claim that Herrara's signature has been robo-signed, the slight differences in the two signatures do not constitute sufficient factual matter to state a plausible claim of fraudulent assignment.  *See Iqbal*, 556 U.S. at 678; *see also Assasepa v. JP Morgan Chase Bank*, No. 11–156, 2012 WL 88162, at *8 (S.D. Ohio Jan. 11, 2012) ("*Twombly* require[s] plaintiffs to set forth more than bare allegations of robo-signing without any other factual support."); *Block v. BAC Home Loans Servicing LP*, No. 11–11181, 2012 WL 2031640, at *4 (E.D. Mich. June 6, 2–12) ("[V]ague and speculative assertions of what has been labeled as 'robo-signing' are insufficient to state a plausible claim of fraud or irregularity.").

Plaintiff further contends that the signature of the notary public, Norma Rojas, on the second assignment is a forgery because the format for the date on that assignment ("May 20, 2011") differs from the format of the date on an unrelated assignment Plaintiff attaches ("11-30-2011").  (*See* Compl. Exs. C-D.)  Plaintiff further points out that Rojas filled in blanks in cursive handwriting on the second assignment but wrote in print on the unrelated assignment. (*See id.*)  This argument is farcical.  Plaintiff focuses on trivial differences while ignoring the fact that Rojas' signature on the two allegedly forged assignments is identical. (*See id.*)

Next, Plaintiff contends that the mortgage and note were bundled and sold off to the Holders, where they were pooled together with other loans as an asset-backed security.

(Compl. ¶¶ 13-14.)   According to Plaintiff, this asset-backed security is subject to an unknown and unproduced pooling and servicing agreement ("PSA"), which requires that the assignment of a mortgage be done in a specific way and within a specific time frame. (Compl. ¶¶ 15, 94.)  Because those conditions were not complied with, Plaintiff concludes that the assignment of the mortgage was invalid.  This argument is frivolous.  Even if there is a pooling and servicing agreement, Plaintiff is not a party to it and has no standing to challenge its terms:

> Plaintiff also raises several arguments relating to whether the Court was misled about certain transfers of the Loan Documents [including whether a PSA was complied with]. . . . [T]he parties to any assignments appear to have ratified or otherwise acquiesced to the transfers and are not challenging them here or attempting to assert any rights in the Loan Documents. Moreover, as discussed below, by virtue of the fact that Defendant is the holder of the Note, it also holds the Mortgage by operation of law. **Finally, regardless of what contracts exist between which entities, Plaintiff was not and is not a party to any of those contracts (including the assignments), and lacks standing to challenge their validity or the parties' compliance with those contracts here.**

*Livonia*, 717 F. Supp. 2d at 746-47 (emphasis added).

The rest of Plaintiff's arguments of fraud and conspiracy are conclusory, unsupported, and bordering on the absurd.  Plaintiff alleges that MERS has no employees, no board of directors, and is not located in Bank of America's offices in California, where Plaintiff claims the second assignment was signed.  (Compl. ¶ 38.)  The Court fails to see the relevance of MERS's corporate structure, especially when attested to in such a conclusory fashion.  Next, shortly after declaring without support that Herrera "may not even be a real

person" and that "numerous third parties employed by Bank of America have been running around signing documents fraudulently holding themselves out as 'Christopher Herrera'" (Dkt. No. 15, at 8-9), Plaintiff proceeds to state that not only is Herrera a real person, but that he was present at the signing of the assignment in question and acting as an agent for Bank of America instead of MERS (*Id.* at 9; Compl. ¶ 39).  Thus, Plaintiff entreats the Court to accept as true the allegation that Bank of America, through its agent, Herrera, was trying to fraudulently assign the mortgage to itself.  As with Plaintiff's contention that Herrera is not a real person, Plaintiff offers no support whatsoever for the argument that Herrera did not sign the assignment on behalf of MERS.

Plaintiff's threadbare arguments and outlandish allegations in this count are insufficient to survive a motion to dismiss.  Accordingly, Count 1 will be dismissed and the allegations of fraud contained therein will not be considered sufficient to constitute the clear showing of fraud or irregularity necessary for Plaintiff to challenge the foreclosure process.

### ii) Counts 4, 5, 7: Intentional or Constructive Fraud, and Conspiracy to Commit Fraud

Plaintiff argues that Bank of America committed either intentional or constructive fraud.  Plaintiff further contends that Bank of America, along with the unidentified defendants, conspired to commit intentional or constructive fraud.[4]  Counts 4, 5, and 7 all depend on the same two allegations of fraud.

---

[4]Count 7 alleges conspiracy in relation to the allegations of fraud made in Counts 4 and 5 and in relation to the allegations that Bank of America violated the FDCPA and MOC in Counts 8 and 10.  Only conspiracy to commit fraud is considered in this section.

First, Plaintiff contends that agents of Bank of America misrepresented to Plaintiff that if he agreed to stop making payments on his mortgage loan and instead applied for a modification, a loan modification would be granted and foreclosure proceedings would not be conducted. (Compl. ¶¶ 139, 155.)  Second, Plaintiff contends that  Bank of America created a fraudulent assignment in order to justify a foreclosure that was not in accordance with Mich. Comp. Laws § 600.3204.  (Compl. ¶¶ 147, 155.)  This second allegation is dependent on the assignment from MERS to Bank of America being fraudulent, a claim this Court has already deemed to be frivolous.  *See supra* Part 3(A)(1)(i).  Thus, only the first allegation of fraud will be considered.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To make out a fraud claim, a plaintiff "must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied."  *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). Additionally, the pleading must "allege with specificity who had made the particular misrepresentations and when they were made."  *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

In Counts 4, 5, and 7's first fraud allegation, Plaintiff does not allege who made the particular representations or when they were made.  In his response brief, Plaintiff insists that he has pleaded this claim with particularity because he provided this information in the general allegations section of the complaint, notably in paragraph 54.  (Dkt. No. 15, at 19).

11

This argument is unconvincing. Plaintiff did provide a date and a name in pleading that around September 10, 2012, David Moore "absolutely promised him, in no uncertain terms that the sale would be postponed, as his loan was still under review for a modification." (Compl. ¶ 54.) However, Count 4 (and Counts 5 and 7 which depend on the allegations in Count 4) refers to "agents" of the servicer committing the fraud, not a single agent. (Compl. ¶ 139.) Moreover, paragraph 54 is inconsistent with the allegations made in Count 4. First, paragraphs 54 and 139 regard *different* time periods. According to paragraph 54, Plaintiff's "loan was still under review for a modification" at the time of the representation by Moore, while according to paragraph 139, the bad faith promise by the "agents" was contingent on Plaintiff first "apply[ing] for a modification." Additionally, paragraph 54 only regards a one-sided promise to postpone the sale of the property, while paragraph 139 does not regard the postponement of the sale but instead regards a promise to grant a loan modification with a lower payment and to not institute foreclosure proceedings *if* Plaintiff stopped making payments on his loan and applied for a modification. Thus, Plaintiff cannot save Counts 4, 5, and 7 by pointing to his pleading in paragraph 54, which regards a separate incident.[5]

In fact, it appears that the pleadings in the general allegations section of the complaint which actually refer to the same incident discussed in paragraph 139 are instead paragraphs 25 and 26, which mirror paragraph 139 in vaguely referring to unnamed servicer

---

[5]Moreover, Plaintiff could not show injury if Count 4 regarded Moore's representation. Plaintiff's sole allegation of injury in Count 4 is "but for those representations, Plaintiff never would have allowed himself to go into default, which ultimately led to the foreclosure." (Compl. ¶ 140.) Plaintiff was *already in default* in September 2012.

"representatives" telling Plaintiff that if he stopped paying on his mortgage he would be granted a loan modification. (Compl. ¶¶ 25-26.) These alleged representations occurred sometime in 2011 before the alleged fraudulent assignment, and are distinct from the alleged representation made by Moore in September 2012. (*See* Compl. ¶¶ 27-28, 55.) Thus, because paragraph 139 and Counts 4, 5, and 7 refer to alleged misrepresentations made by unnamed agents sometime in 2011, and the general allegations concerning these misrepresentations suffer from the same particularity deficiencies, Counts 4, 5, and 7 have not been pleaded with particularity and must be dismissed.[6]

### iii) Count 9: Violation of the MCPA

Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," is applicable to all allegations of fraud, including allegations of fraud under the MCPA. *See Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2005 WL 3416466, at *10 (E.D. Mich. Dec. 13, 2005). Plaintiff alleges seven violations of the MCPA, four of which allege fraud: (1) communicating with Plaintiff in a misleading or deceptive manner; (2) making a deceptive statement in a communication to collect a debt; (3) misrepresenting in a communication with Plaintiff the legal status of a

---

[6]Even if these fraud claims were pleaded with particularity, the Court would dismiss them. The Michigan Statute of Frauds expressly states that "[a]n action shall not be brought against a financial institution to enforce [a promise or commitment to waive a provision of a loan or make any other financial accommodation] unless the promise or commitment is in writing and signed." Mich. Comp. Laws § 566.132(2). The language of this statute is unambiguous and should be read as an "unqualified and broad ban" of any claim – "no matter its label" – against a financial institution to enforce the terms of an oral promise waiving a loan provision. *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000).

legal action being taken and the legal rights of Plaintiff; and (4) communicating with Plaintiff without accurately disclosing the caller's identity. (Compl. ¶ 179(a)-(d).) Plaintiff provides no details in these incredibly vague allegations. Plaintiff does not provide the time or contents of the misrepresentations, nor does Plaintiff provide who made the misrepresentation or when. Indeed, beyond the recitation of general behavior the MCPA prohibits, Count 9 is devoid of details.

Viewing Plaintiff's complaint as a whole, only one particular instance of fraud is pleaded at any point. In the general allegations section of the complaint, Plaintiff alleges that around September 10, 2012, David Moore "absolutely promised him, in no uncertain terms that the sale would be postponed, as [Plaintiff's] loan was still under review for a modification." (Compl. ¶ 54.) Plaintiff contends in his response brief that this communication violated § 445.252(a) and (e) of the MCPA. Subsection (a) prohibits "[c]ommunicating with a debtor in a misleading or deceptive manner . . . ." Subsection (e) prohibits a regulated person from making "an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt."

However, even though the allegation in paragraph 54 of the complaint provides details not present elsewhere in the complaint and liberally could be construed to be one of the misrepresentations vaguely alluded to in Count 9, Plaintiff still must adequately plead a causal link between the misrepresentation and the alleged harm. *See Bolone v. Wells Fargo*

14

*Home Mortg., Inc.*, 858 F. Supp. 2d 825, 837 (E.D. Mich. 2012) (dismissing an MCPA claim because "[n]o causal relationship exists between the representative's statements and Wells Fargo's decision to not offer a permanent loan modification"). Plaintiff does not identify his injury in Count 9, pleading only that he "has suffered an injury, loss, or damage from a person for whom money was collected by Defendants' use of methods, acts, or practices in violation of the Michigan Act." (Compl. ¶ 180.) Moreover, even if the Court assumes that the loss of Plaintiff's property is the injury for the alleged violation of the MCPA, there is no connection between the alleged misrepresentation and the foreclosure of the property. Plaintiff's property was foreclosed because he was in default on his loan. At the time of the alleged communication from Moore, Plaintiff was already in default. Plaintiff has not alleged that he could have cured his default absent Moore's communication, and, even accepting as true that Plaintiff took no further action after Moore's alleged communication, there is absolutely nothing in the pleadings suggesting that there was any viable action Plaintiff could have taken to prevent the sale in the two weeks between the communication and the foreclosure.

As for the alleged violations of the MCPA which do not involve fraud – (1) communicating with Plaintiff when Plaintiff was actively represented by an attorney; (2) using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversations repeatedly and at unusual times; and (3) failing to implement a procedure designed to prevent a violation by an

15

employee – Plaintiff merely quotes the statute. *See* Mich. Comp. Laws § 445.252(h), (n), (q). Beyond quoting subsections (h), (n), and (q) from the statute, Plaintiff makes no allegations regarding Bank of America's conduct. Even under the lower pleading standard for non-fraud claims, this pleading is woefully inadequate. A plaintiff must provide more than "a formulaic recitation of a cause of action's elements" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *see also Brady v. Chase Home Fin., LLC*, No. 1:11–CV–838, 2012 WL 1900606, at *10 (W.D. Mich. May 24, 2012) (Quist, J.) (dismissing a plaintiff's MCPA claim because the allegations "merely parrot certain provisions of the statute" and "fail to provide any factual 'meat' for her bare-bones claim").

Accordingly, Count 9 will be dismissed.

### iv) Count 12: Unclean Hands

In Count 12, Plaintiff argues that Defendants may not seek the equitable relief of foreclosure because of their "unclean hands." (Compl. ¶¶ 194-197.) "The [unclean hands] doctrine is not a cause of action; rather, it is a defense . . . ." *Meyer v. Citimortgage, Inc.*, No. 11–13432, 2012 WL 511995, at *6 (E.D. Mich. Feb. 16, 2012); *see also Soto v. Wells Fargo Bank, N.A.*, No. 11–1406, 2012 WL 113534, at *5 (E.D. Mich. Jan. 13, 2012) ("[T]he 'unclean hands' doctrine does not state a cause of action."). Accordingly, Count 12 must be dismissed. Moreover, Count 12, while it refers to the allegations of fraud made elsewhere in the complaint, does not contain any new allegations of fraud which might affect Plaintiff's statutory right to redeem. Consequently, it also fails to comply with Rule 9(b)'s heightened

16

pleading requirement.

In conclusion, Counts 1, 4-5, 7, 9, and 12 will all be dismissed for failure to state a claim. Because Plaintiff has not shown clear fraud or irregularity in the foreclosure proceedings, Plaintiff does not have a statutory right to challenge the foreclosure process. Accordingly, Counts 2, 3, 6, and 13, which do not allege fraud in the foreclosure proceedings but still seek to vacate the sheriff's sale, must also be dismissed.

### 2. Non-Fraud Property Rights Claims

As just stated, Counts 2, 3, 6, and 13 must be dismissed because Plaintiff has no rights in the property under Michigan law. However, even if Plaintiff was statutorily able to bring such claims, the Court would still dismiss them because Plaintiff has not stated plausible claims to relief.

### i) Count 2: Failure to Comply with Loan Modification Requirements

Plaintiff's second claim alleges that Bank of America violated Mich. Comp. Laws § 600.3205c when it determined that Plaintiff did not qualify for a loan modification. According to Plaintiff, he contacted the foreclosing law firm in a timely manner and informed them that he wished to participate in the loan modification process, but was ignored. (Compl. ¶ 107.) Additionally, Bank of America allegedly never provided Plaintiff with a copy of the program, process, or guidelines that were being used to determine whether Plaintiff qualified for modification, never provided him with the calculations made to determine his eligibility for a modification, and engaged in meetings to determine whether

17

Plaintiff was eligible for a modification without the presence of a person authorized to grant a loan modification.  (Compl. ¶¶ 109-110, 119.)

Bank of America has provided the Court with a "Proof of Service & Affidavit of Mailed Notice," which was attached to the sheriff's deed.  (Dkt. No. 9, Ex. E.)  This affidavit provides that Plaintiff was provided with proper notice and that "neither a housing counselor nor the borrower requested a meeting with the designee to negotiate a possible loan modification within the time period specified in MCL 600.3205b(1)."  (*Id.*)  This affidavit is "presumptive evidence of the facts therein contained."  Mich. Comp. Laws § 600.3264.

Plaintiff's pleadings are insufficient to overcome this presumption that a loan modification was not requested in time.  Plaintiff's complaint does not provide the date the alleged communication was made, what form the alleged communication took, or who Plaintiff communicated with.  (*See* Compl. ¶ 107.)  Instead, Plaintiff pleads only that he communicated with "a representative" from "the foreclosing law firm" "prior to the deadline."  (*Id.*)  Even after Bank of America raised the presumptiveness of the facts contained in the affidavit in its motion to dismiss, Plaintiff failed to provide any more details in his response brief to remedy the vagueness of this pleading.

Moreover, Plaintiff's complaint does not quote the correct deadline for requesting a loan modification.  Plaintiff selectively quotes the foreclosure statutes to imply that he had 90 days to contact the designated entity to request a loan modification.  Plaintiff cites Mich. Comp. Laws § 3205c(5), which discusses a 90-day time limit after notice, right before

asserting that he contacted the foreclosing law firm "prior to the deadline." (Compl. ¶¶ 105, 107.) However, Plaintiff fails to cite § 3205c(1) which explains that § 3205c(5) provides 90 days *not for contacting the designated entity* but instead for the delivery of materials to the borrower (including calculations and a copy of the program, process, or guidelines used), and only comes into effect "[i]f a borrower has, either directly or through a housing counselor, **contacted a person** designated under section 3205a(1)(c) **under section 3205b** but the process has not resulted in an agreement to modify the mortgage loan." Mich. Comp. Laws § 3205c(1) (emphasis added). Section 3205b provides the relevant deadline for requesting a loan modification:

> If a borrower wishes to participate in negotiations to attempt to work out a modification of a mortgage loan, **within 30 days after the notice** under section 3205a1 is mailed to the borrower, **the borrower shall either contact the person designated** under section 3205a(1)(c) directly **or contact a housing counselor** from the list provided under section 3205a.

Mich. Comp. Laws § 600.3205b(1) (emphasis added).

In light of the confusion evidenced in Plaintiff's pleadings as to the correct deadline for contacting the designated law firm, and in light of the vagueness and conclusory nature of the sole sentence alleging that proper communication was made, the Court finds that the § 600.3264 presumption that the facts in the affidavit are true has not been overcome.

Consequently, the complaint does not contain sufficient factual matter to state a plausible claim that Plaintiff contacted the foreclosing law firm to request a loan modification in the time required. Because Bank of America has no obligation to provide

a borrower with a copy of the calculations undergone or the program, process, or guidelines used for loan modification absent such timely contact, § 3205c(1), Plaintiff has failed to state a claim upon which relief may be granted.

### ii) Count 3: Failure to Comply with Federal Regulations

Plaintiff argues that Bank of America failed to comply with 24 C.F.R. 203.604, a regulation of the Department of Housing and Urban Development ("HUD") which requires a face-to-face meeting with a borrower to resolve a default before the borrower falls three monthly payments behind. (Compl. ¶ 127.) Accepting the truth of Plaintiff's factual allegations, there is no private cause of action under 24 C.F.R. 203.604. As the Sixth Circuit has explained, "no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies." *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989); *see also Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 910 (E.D. Mich. 2012) ("The complaint alleges that the defendant failed to 'provide the borrower with a face-to-face meeting to resolve any default before the borrower falls three monthly payments behind in their mortgage.' . . . However, federal regulations by themselves do not create private causes of action, at least in the present case."). State courts have similarly recognized that no private right of action exists for the violation of HUD regulations:

> The federal courts have determined that the HUD lenders handbook, the foundation of the defense, is merely a statement of HUD policy, which does not have the force of law and which does not establish procedural prerequisites to foreclosure. *Brown I*, supra, p. 998. The handbook and regulations "deal

only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow". *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (C.A.5, 1977).

*Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985);[7] *see also*

*In re Estate of Olson*, No. 283818, 2009 WL 3103841, at *4 (Mich. Ct. App. Sept. 29, 2009)

(affirming trial court's citation of *Snell* "for the proposition that a violation of HUD

guidelines does not give a mortgagor an independent cause of action to void the mortgage");

*Baker v. Northland Mortg. Co.*, 344 F. Supp. 1385, 1386 (N.D. Ill. 1972) ("Plaintiff argues

that her claim arises under the National Housing Act, 12 U.S.C. § 1701 *et seq.* and the

regulations of the Federal Housing Administration, 24 C.F.R. 203 *et seq.*, and its

Mortgagees' Guide. . . . The statute and regulations relied upon deal only with relations

between the mortgagee and the government, and give mortgagors no claim to a duty owed

nor a remedy."); *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 546 (Md. Ct. App.

2007) ("[T]he regulations do not control directly the relationship between the mortgagor and

mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of

action against the mortgagee.").[8]

---

[7]Plaintiff contends in his response brief that *Snell* only rejected a private cause of action for violation of HUD regulations because the mortgage contract at issue did not incorporate HUD regulations. Even if *Snell*, in dicta, suggests that a party might be able to state *a breach of contract defense* to summary eviction proceedings based on violation of HUD regulations when those regulations are incorporated into a mortgage contract, 370 N.W.2d at 403-04, Count 3 seeks affirmative redress under 24 C.F.R. 203.604, and does not seek redress for breach of contract. (*See* Compl. ¶¶ 125-136.)

[8]Some courts have allowed the assertion of HUD regulations as an affirmative defense.

(continued...)

Consequently, Count 3 must be dismissed.

### iii) Count 6: Tortious Interference with Contractual Relations

This count continues the frivolous argument that the only parties to the mortgage contract are Plaintiff and First Place Bank, and adds that the unnamed defendants Trustee and Holders caused Bank of America to breach Plaintiff's contract with First Place Bank. (Compl. ¶¶ 163-164.)

These allegations are nonsensical. The count is entirely unclear as to whether it is directed at the unnamed parties or Bank of America. Moreover, to the extent the count pertains to Bank of America, Bank of America cannot be held liable for tortious interference with the mortgage contract. Under Michigan law, "tortious interference with contract requires proof . . . that the defendant was a 'third-party' to the contractual relationship." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 800 (6th Cir. 2007) (quoting *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 396 (E.D. Mich. 2000)). As thoroughly discussed, Bank of America is a party to the contract because First Place Bank assigned its interest to MERS, which then validly assigned its interest to Bank of America. Accordingly, Count 6 must be dismissed.

### iv) Count 13: Breach of Implied Duty of Good Faith and Fair Dealing

---

[8](...continued)
*See, e.g.*, *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853 (Ind. Ct. App. 2010). However, these courts distinguish themselves from cases holding that no cause of action exists to sue on a HUD regulation because those cases "deal[] with the implication of a private cause of action and not with the assertion of an affirmative defense." *Id.* at 862 (quoting *Bankers Life Co. v. Denton*, 458 N.E.2d 203, 206 (Ill. Ct. App. 1983)).

Plaintiff alleges that Defendants breached the implied duty of good faith and fair dealing by failing to provide Plaintiff with a loan modification. (Compl. ¶¶ 199-200.) Bank of America contends that Michigan law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing. (Dkt. No. 8, at 24.) This statement of the law is imprecise. It is true that "Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself." *McLiechey v. Bristol West Ins. Co.*, 408 F. Supp. 2d 516, 522 (W.D. Mich. 2006) (Bell, J.) (quoting *Liggett Restaurant Group, Inc. v. City of Pontiac*, No. 256571, 2005 WL 3179679 at *1 (Mich. App. Nov. 29, 2005) (emphasis added)). However, if a contract explicitly leaves the manner of a party's performance to its discretion, a breach of contract claim asserting violation of the implied duty of good faith and fair duty is permissible. *Id.* ("Breach of contract actions based upon the breach of an implied covenant of good faith and fair dealing are limited to contracts where a contractual term leaves the manner of performance to one party's discretion."); *see also Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) ("An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion.").

Count 13 is framed, however inartfully, as a breach of contract claim: "BREACH OF CONTRACT OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING." However, Plaintiff has not pointed to any contractual provision where Bank of America's

predecessor in interest, First Place Bank, promised to exercise discretion in the loan modification determination. In fact, the discretion Plaintiff alleges Defendants possessed was expressly non-contractual: "Defendants had the discretion to modify Plaintiff's loan **in accordance with the Home Affordable Modification Program and/or other loss mitigation programs**." (Compl. ¶ 200 (emphasis added).) Neither the mortgage nor the note contains a reference to the Home Affordable Modification Program or any other type of loan modification program.[9] Accordingly, Plaintiff has not stated a claim for breach of contract based upon the implied duty of good faith and fair dealing.

In conclusion, Counts 2, 3, 6, and 13 will be dismissed.

## B. Claims not Dependent on Plaintiff Possessing Property Rights

Plaintiff's remaining claims – part of Count 7 and Counts 8, and 10-11 – do not depend on the assertion of rights in the property and are therefore not extinguished based on the expiration of the redemption period. However, these claims must also be dismissed for failure to state a claim.

### 1. Count 7, 8, 10: Violation of the FDCPA and the MOC; Conspiracy to Violate the FDCPA and the MOC

The FDCPA only applies to "debt collectors." *See* 15 U.S.C. § 1692. According to

---

[9]In any case, Plaintiff would be ineligible for the Home Affordable Modification Program. Plaintiff obtained his mortgage on November 16, 2009, and one of the eligibility critera for the program is that the mortgagor obtained his mortgage "on or before January 1, 2009." *Home Affordable Modification Program: Eligibility*, Making Home Affordable.gov (last updated May 28, 2013), http://www.makinghomeaffordable.gov/programs/lower-payments/Pages/hamp.aspx.

the statute, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Notably, "creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003); *see also Partlow v. Aurora Loan Servs., L.L.C.*, No. 11-12940, 2012 WL 12766, at *5 (E.D. Mich. Jan. 4, 2012) ("It is well settled that the provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors.").

While Plaintiff alleges that Bank of America is a "debt collector" (Compl. ¶ 172), this allegation is patently untrue according to the statutory definition. First Place Bank, the owner of Plaintiff's debt, assigned its interest in the debt to MERS who then assigned the interest to Bank of America. As previously discussed, Plaintiff's argument that these assignments were fraudulent is frivolous. Accordingly, Plaintiff's debt was owed directly to Bank of America, and Bank of America is a creditor/mortgagor not subject to the FDCPA.[10]

The MOC similarly applies only to a "collection agency," which is defined as "a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another[.]" Mich.

---

[10]There is an exception for creditors who use names other than their own to collect on their debts. *See* § 1692a(6). There is no allegation that Bank of America did this. The Sixth Circuit has also held that the term "debt collector" includes "any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012). Plaintiff has not alleged that Bank of America acquired its interest after Plaintiff was in default.

Comp. Laws § 339.901(b). Importantly, "[c]ollection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as . . . [a] state or nationally chartered bank when collecting its own claims." § 339.901(b)(ii). Because Bank of America's actions here were as owner of the indebtedness and confined to the operation of its business as a loan servicer, the MOC is inapplicable.

Accordingly, Counts 7, 8, and 10 will be dismissed.

### 2. Count 11: Accounting

Plaintiff seeks an accounting because Defendants have "fraudulently inflated the amount required to be paid by Plaintiff each month, have failed and/or refused to properly credit payments to his account, and have fraudulently inserted phantom charges to his account." (Compl. ¶ 190.) Plaintiff cannot bring such an accounting claim. An accounting "is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). "The burden of proof is on plaintiff to show the inadequacy of the legal remedy" and "Michigan courts have long held that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue." *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999) (Bell, J.). "The law is clear that an 'accounting may not be had where the action is for a specific sum due under a contract.'" *Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009) (quoting *Brown v. Brodsky*, 81 N.W.2d

363, 366 (Mich. 1957)). In *Barkho*, the court dismissed a claim for an accounting similar to

Plaintiff's claim:

> Here, the Plaintiff's claims are based entirely on the amount due under the mortgage note which, in essence, is a contract between the parties. In addition, the Plaintiff's complaint does not support an inference that the transaction at issue is so complex that ordinary discovery procedures would be inadequate to discern the amount in controversy. Without a showing of the necessity of invoking the equitable jurisdiction of the Court to order an accounting, this claim must be dismissed.

*Id.*; *see also Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010) ("An

accounting is not available where the action is for specific amount due under the contract.");

*West v. Wells Fargo Bank, N.A.*, No. 2:12–cv–13572, 2013 WL 3213269, at *6 (E.D. Mich.

June 26, 2013) ("[A]n accounting is an extraordinary, equitable remedy that is not permitted

when a remedy at law is available and, moreover, is inappropriate in cases regarding amounts

due under a contract, such as a note or mortgage."); *Colbert v. Fed. Nat'l Mortg, Ass'n*, No.

12–13844, 2013 WL 1629305, at *13 (E.D. Mich. Apr. 16, 2013) ("Because the sums due

under a mortgage and note can be determined by the parties' contractual agreement, an

accounting is unavailable.").

Because Plaintiff's claim for an accounting seeks a determination of the amount owed

under his mortgage loan, he has adequate legal remedies and the claim must be dismissed.

**IV.**

For the reasons stated above, Bank of America's motion to dismiss will be granted, and Plaintiff's complaint will be dismissed in its entirety.


Dated: <u>July 11, 2013</u>                                   <u>/s/ Robert Holmes Bell</u>
                                                              ROBERT HOLMES BELL
                                                              UNITED STATES DISTRICT JUDGE